**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REBECCA PEAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 784 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| AUNT MARTHA'S YOUTH SERVICE CENTER, | ) ) | Magistrate Judge Denlow |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff, Rebecca Peak, by and through her attorneys, Pedersen & Weinstein LLP, for her Amended Complaint against Defendant, Aunt Martha's Youth Service Center, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. Section 1981 ("Section 1981") to challenge Defendant's unlawful discrimination against her based on her gender, pregnancy, and race. Plaintiff also alleges that Defendant violated the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. Finally, Plaintiff seeks relief for the retaliation she suffered as a result of complaining about Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a).

**PARTIES**

4.     Plaintiff, Rebecca Peak ("Plaintiff"), was formerly employed by Defendant in Park Forest, Illinois. Plaintiff began her employment with Defendant in September 2004 and was unlawfully terminated in August 2007. Plaintiff is female and her race is black.

5.     Defendant, Aunt Martha's Youth Service Center ("Defendant"), is a private, not-for-profit agency that provides health and social services in Illinois, including child welfare, counseling, and child care services. Defendant employs approximately 600 employees in the Chicago area.

6.     At all times relevant to this Complaint, Defendant employed more than fifteen (15) employees and was engaged in an industry affecting commerce.

**FACTUAL ALLEGATIONS**

*Background*

7.     Plaintiff began her employment with Defendant in September 2004 as a Desktop Support Technician and was later promoted to IT Manager in June 2005. As set forth below, in May 2006, Plaintiff was demoted to Support Services Manager, the title she held at the time of her termination, following the announcement of her pregnancy.

8.     Throughout her employment, Plaintiff discharged all duties assigned to her competently and enjoyed an excellent reputation with regard to the high quality of her work and her conscientious devotion to her job.

9.     Given her background and talents, Plaintiff had every reason to anticipate a successful and rewarding career with Defendant. However, notwithstanding her impressive job performance, and as described in further detail below, Plaintiff was subjected to a pattern of gender and racial discrimination throughout her employment, as well as retaliation for speaking

2

out against the unlawful conduct. She ultimately was terminated unlawfully in August 2007.

*Plaintiff Was Subjected To Gender Discrimination*

10. During her employment, Defendant subjected Plaintiff to gender discrimination by denying her the same level of managerial support and perquisites of employment that it extended to male employees. For example, Scott Gebar ("Gebar"), Chief Information Officer and Plaintiff's direct supervisor for a time, did not provide Plaintiff with the level of guidance promised to her or that he regularly afforded male employees. For further example, although a similarly situated male employee was awarded compensatory time for working weekends and/or evenings, Plaintiff did not earn compensatory time for working extra and her requests for such benefits were denied.

11. Defendant took other adverse actions against Plaintiff on account of her gender, such as diminishing her role within the organization. For example, in early 2006, Plaintiff was to hire two employees for system engineer and application developer positions that would report to her, but after she posted the jobs, Gebar unilaterally hired two male employees himself. Gebar then changed the reporting structure of the positions so that the two male employees reported to him instead of Plaintiff. For further example, Gebar treated one of the male employees he hired, Shannon Boyd ("Boyd"), more favorably than he treated Plaintiff, such as by giving Boyd additional responsibilities and developing a close and mentoring relationship with him.

12. On another occasion that Plaintiff was to hire employees to report to her, Gebar told her to give him all the resumes for potential candidates and said that he and Boyd would interview them instead of her. As explained below, Gebar also actively sought to elevate Boyd's career over Plaintiff's.

13. In addition, upon information and belief, male employees were paid more than

3

Plaintiff was paid. Also, as explained below, Defendant subjected Plaintiff to discrimination on account of her pregnancy.

*Plaintiff Was Subjected To Discrimination On Account Of Pregnancy*

14.    As further gender discrimination, Plaintiff was also subjected to discrimination on account of her pregnancy. Immediately after announcing her pregnancy on May 16, 2006, Plaintiff experienced discriminatory treatment with respect to job responsibilities, benefits, managerial support, and other aspects of her employment.

15.    More specifically, on May 16, 2006, approximately five minutes after informing Gebar of her pregnancy, Gebar told Plaintiff he was going to demote her from IT Manager to Support Services Manager. Simultaneously, Gebar promoted Boyd, one of the male employees Gebar hired as described above, to Technical Services Manager. Plaintiff previously had overheard Gebar telling Boyd that he wanted to place Boyd over Plaintiff, but that he had to plan it carefully. As such, Plaintiff's pregnancy presented an opportune (albeit illegal) time for Gebar to elevate Boyd's status within the organization at Plaintiff's expense. Gebar otherwise demonstrated inappropriate biases against married women or women with children by publicly stating that a female employee who was getting married would not continue working, even though the female employee had given no indication that she would not continue to work.

16.    Moreover, in an effort to make Plaintiff appear incompetent, Gebar began making several demands on Plaintiff he knew to be outside her job duties and with unreasonable deadlines, knowing that she did not have the training or tools to perform the tasks. For example, Gebar directed Plaintiff to do a particular report within a short time frame that one of her male subordinates used to do, even though Gebar knew Plaintiff did not work with the software, have the proper pass codes, or have any experience generating those reports.

4

17. Defendant also attempted to deny Plaintiff various benefits of her employment, such as sick days. For example, in early July 2006, when Plaintiff was out for a few days on doctor-ordered bed rest, and only days after she had complained to human resources about some of the discriminatory conduct described herein, Gebar emailed and called Plaintiff, demanding that she call him back that same day and chastised her for being out. Gebar also falsely told Plaintiff that she had not carried over any sick days from the previous year and that she had not accrued any sick days for the current year, implying that she had no right to be out sick. Plaintiff later confirmed that she actually had more than 11 sick days that had carried over from the previous year and to which she was entitled to take.

18. Gebar otherwise interfered with Plaintiff's sick leave that same week in early July 2006 and penalized her for being out by rifling through her office and her emails while she was out, and unjustly accused her of misconduct. For example, Gebar accused Plaintiff of deleting company related emails, yet Plaintiff had simply archived her emails by fiscal year and the most recent fiscal year had just ended days earlier. Gebar also stated he would not allow Plaintiff to attend any outside vendor training, while not applying any such restrictions on others in her department.

19. Defendant's discriminatory and retaliatory treatment of Plaintiff on account of her pregnancy continued up until she began her maternity leave in November 2006. Upon her return to work in January 2007, the unlawful treatment resumed and only intensified. For example, Plaintiff's job responsibilities were drastically reduced. Gebar told Plaintiff that she would start doing field work and taking service calls, while her more prestigious managerial duties, including purchasing and special projects, were reassigned to male employees and/or employees who had not had pregnancies or leaves of absence under the Family and Medical Leave Act.

Gebar further eroded Plaintiff's managerial responsibilities by not allowing her to hire staff and instead he selected those who worked with her on the help desk. Moreover, upon returning to work, all of Plaintiff's work logs were deleted, her staff was instructed not to talk to her about work issues, and any assignments she had worked on prior to her leave were reassigned to Gebar.

*Plaintiff Was Subjected To Racial Discrimination*

20.     In addition to the foregoing, Plaintiff was also subjected to racial discrimination. For example, some of the duties that were taken away from her, such as purchasing, were reassigned to white employees. Plaintiff and other black employees were otherwise treated less favorably than white employees.

*Plaintiff Was Subjected To Retaliation*

21.     Following some of the incidents described herein, Plaintiff complained about the unlawful discrimination, but to no avail. For example, Plaintiff tried resolving the situation directly with Gebar, but he only became angry when she raised her concerns with him. Plaintiff also reported the discrimination to Renee Wheeler ("Wheeler"), Defendant's human resources representative, on several occasions verbally and in writing, but human resources failed to take appropriate remedial or corrective action, and instead allowed the discrimination and retaliation to continue unabated.

22.     As a result of her complaints, Plaintiff was subjected to retaliation. This retaliation includes some of the adverse actions described above, such as removing some of Plaintiff's job responsibilities and interfering with her benefits. In addition, Gebar became increasingly more hostile toward Plaintiff, creating a hostile work environment for her. For example, at a meeting with him, Plaintiff and Wheeler, and in response to her complaints, Gebar repeatedly stated words to the effect of "I don't like your demeanor" and "this isn't going to

6

work." Gebar otherwise displayed overt animosity towards Plaintiff by slamming doors in her presence, talking to her staff about her, and purposely isolating her from the rest of the department. Gebar also tried to embarrass Plaintiff in staff meetings by publicly criticizing the help desk and trying to create the appearance that she did not perform her job adequately. Alternatively, Gebar simply ignored Plaintiff in an attempt to further demoralize and marginalize her. Gebar also refused to conduct Plaintiff's performance review in a timely manner and failed to give her a promised raise.

23. In addition, on February 6, 2007, Defendant astonishingly issued a written warning to Plaintiff and threatened her with termination explicitly because of her complaints of discrimination and retaliation. The warning states, "You stated in the e-mail that the decisions I [Gebar] have made are retaliation against you. Rebecca, your continuous questioning of the decisions I make concerning staff and changes in the department are evidence of your failure to cooperate and work harmoniously with me as your direct supervisor." On its face, the written warning threatens Plaintiff with termination in retaliation for her complaints of discrimination.

*Plaintiff Filed A Charge Of Discrimination And Faced Additional Retaliation*

24. In March 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), believing it to be the only way to gain Defendant's compliance with the law. However, while she had been hopeful that Defendant would work with her to resolve her claims by investigating and remedying them, Defendant instead became intent on engaging in a campaign of harassment and retaliation against Plaintiff designed solely to force her to resign or to create a pretextual justification to terminate her.

25. Indeed, soon after filing her charge with the EEOC, Defendant assigned a new manager to Plaintiff, Jeremy Fennessy ("Fennessy"). In one of his first discussions with

Plaintiff, Fennessy disclosed to Plaintiff that Gebar had told him that he did not respect Plaintiff and that she was the only employee in the department with a disciplinary action against her. Fennessy continued to ask Plaintiff if she was just a disgruntled employee and whether or not she wanted to continue working for Defendant. It was clear to Plaintiff that Gebar had intentionally disparaged her to her new manager in retaliation for her complaints, thereby unfairly tainting his perception of her and ruining her chances of having a fresh start with a new manager.

26.    Thereafter, Fennessy treated Plaintiff with a level of hostility not directed at other employees and otherwise treated her less favorably than others. For example, Fennessy once totally disregarded Plaintiff's privacy and treated her with a complete lack of professional courtesy by unlocking her office door and barging in while she was pumping breast milk for her newborn baby, causing her great embarrassment and discomfort. Further, as described below, Defendant subsequently took Plaintiff's office away from her, thereby denying her the privacy she needed to express her breast milk, and Defendant did not provide her with another viable location.

27.    Perhaps most telling of Defendant's unlawful actions against Plaintiff is when she overheard Gebar openly tell Fennessy words to the effect of "we need to get [Plaintiff] out of here." When Plaintiff reported this particularly troubling incident to Wheeler in human resources, Wheeler failed to take any appropriate remedial action and instead inexplicably and unjustly reprimanded Plaintiff for listening in on the conversation.

28.    Moreover, days after reporting to Wheeler the incident described above, Defendant issued to Plaintiff another sham disciplinary warning and threatened her with termination. Simultaneously, Plaintiff's office was taken away and she was reassigned to a cubicle.

29. In addition, in June 2007, Fennessy told Plaintiff that he knew she had a lawsuit against Defendant and that he had been pulled into it. He then told Plaintiff that human resources had instructed him to "document everything now" and that "this is going to be fun." When Plaintiff reported these additional comments to Wheeler, her concerns were not addressed and Wheeler instead was more interested in knowing if Fennessy had disclosed to Plaintiff who had so instructed him.

30. Defendant also issued to Plaintiff a sham performance review that did not accurately reflect her job performance and instead contained numerous false and unwarranted criticisms. Among other items, the review accused Plaintiff of lacking ethics, being defensive, and not being a team player. Defendant then used this review as a pretextual justification to deny Plaintiff a proper pay raise.

31. Further demonstrating Defendant's pretextual and hypocritical treatment of Plaintiff, Plaintiff was instructed by Fennessy to revise the performance reviews she had prepared for her team members and to follow procedures for the reviews that clearly were not followed for her when she received her negative performance review.

*Plaintiff Filed A Second Charge Of Discrimination And Faced Further Retaliation*

32. Based on these additional discriminatory and retaliatory actions described above, Plaintiff filed a second charge of discrimination with the EEOC in July 2007. Again, Plaintiff hoped to curb Defendant's unlawful conduct, but remarkably, Defendant only brazenly escalated its actions against her and terminated her the next month.

33. For example, on July 31, 2007, shortly after she filed her second EEOC charge and Defendant learned of it, Defendant issued Plaintiff yet another unfair disciplinary notice. Plaintiff responded to the write-up by explaining that the discipline against her was unfounded.

Plaintiff further stated that she believed the write-up was retaliatory and again asked for help in resolving the true issues at hand.

34. However, on August 13, 2007, one week after reporting this additional act of discrimination and retaliation to human resources, and consistent with its previous threats, Defendant terminated Plaintiff's employment on pretextual grounds.

*Defendant Subjected Plaintiff To Post-Employment Discrimination And Retaliation*

35. Following her unlawful termination, Defendant continued its pattern of discrimination and retaliation against Plaintiff. For example, Defendant contested Plaintiff's application, albeit unsuccessfully, for unemployment benefits on frivolous grounds. Defendant even continues to fight the award of benefits to Plaintiff after its own counsel failed to appear for a hearing with no explanation or good cause.

36. In addition, Defendant failed to pay Plaintiff her final paycheck in accordance with Illinois law. Defendant otherwise failed to pay Plaintiff all wages owed to her, including denying her a raise that was to go into effect on July 1, 2007.

*Defendant Violated The Family And Medical Leave Act*

37. By the adverse actions described above, i.e. refusing to put Plaintiff back into her former position as a result of her taking a maternity leave and denying her other terms and conditions of employment as a result of her maternity leave, Defendant also violated the Family and Medical Leave Act ("FMLA"). Defendant engaged in this unlawful conduct in retaliation for Plaintiff taking such leave, and in order to interfere with her ability to take a leave of absence.

38. Defendant also failed to address in a timely manner Plaintiff's request for FMLA leave and to provide her with information regarding her leave.

*Defendant Failed To Exercise Reasonable*
*Care To Prevent And Correct Unlawful Conduct*

39. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendant failed to exercise reasonable care to prevent and correct promptly any racial discrimination and harassment. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise. Indeed, despite Plaintiff's repeated complaints to human resources and requests for assistance, human resources failed to investigate the matter and failed to even speak with Plaintiff about her concerns.

40. The discrimination and retaliation described above was consistent with Defendant's standard operating procedure.

41. Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

*Plaintiff Timely Filed Charges Of Discrimination And Unlawful Retaliation*

42. Plaintiff timely filed charges of discrimination and unlawful retaliation with the EEOC. Plaintiff subsequently amended her charge twice to include additional acts of discrimination and retaliation, including her termination. Plaintiff has requested and received her Notices of Right to Sue on all of her charges.

*Plaintiff Suffered Damage*

43. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

44. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

45. Plaintiff's career and reputation has been irreparably damaged as a result of

11

Defendant's unlawful conduct.

46.     Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

47.     Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

48.     Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference into Count I of this Complaint.

49.     Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

50.     By the conduct as described herein, Defendant subjected Plaintiff to gender discrimination in violation of Title VII.

## COUNT II

### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

51.     Plaintiff realleges paragraphs 1 through 50 and incorporates them by reference into Count II of this Complaint.

52.     Title VII, specifically 42 U.S.C. § 2000e(k), makes it unlawful to discriminate against any individual on the basis of sex, including on the basis of pregnancy, childbirth, or

related medical conditions.

53. By the conduct as alleged herein, Defendant subjected Plaintiff to discrimination on the basis of pregnancy, childbirth, and/or related medical conditions in violation of Title VII.

## COUNT III

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

54. Plaintiff realleges paragraphs 1 through 53 and incorporates them by reference into Count III of this Complaint.

55. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of race.

56. By the conduct as alleged herein, Defendant subjected Plaintiff to race discrimination in violation of Title VII.

## COUNT IV

## RETALIATION IN VIOLATION OF TITLE VII

57. Plaintiff realleges paragraphs 1 through 56 and incorporates them by reference into Count IV of this Complaint.

58. Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

59. Defendant retaliated against Plaintiff for her complaints of discrimination. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII.

## COUNT V

## UNLAWFUL CONDUCT
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

60. Plaintiff realleges paragraphs 1 through 59 and incorporates them by reference

into Count V of this Complaint.

61. The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), entitles employees to a 12-week leave during any 12-month period because of the birth of a child. The FMLA also entitles any employee who takes such a leave to be restored to her former position or an equivalent position with equivalent terms and conditions of employment as her former position. The FMLA further makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

62. By its conduct as alleged herein, Defendant violated the FMLA.

63. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT VI

### UNLAWFUL RETALIATION
### IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

64. Plaintiff realleges paragraphs 1 through 63 and incorporates them by reference Count VI of this Complaint.

65. The FMLA, specifically 29 U.S.C. § 2615(a)(2), makes it unlawful for any employer to discharge or in any other manner discriminate against any employee who has opposed any practice made unlawful by the Act.

66. By its conduct as alleged herein, including further acts of discrimination, harassment, and retaliation against Plaintiff, Defendant violated the FMLA.

67. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT VII

### RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

68. Plaintiff realleges paragraphs 1 through 67 and incorporates them by reference into Count VII of this Complaint.

69. 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, ("Section 1981"), prohibits discrimination based on race in the performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. Section 1981 also prohibits racial harassment.

70. By the conduct as alleged herein, Defendant subjected Plaintiff to race discrimination in violation of Section 1981.

## COUNT VIII

### RETALIATION IN VIOLATION OF SECTION 1981

71. Plaintiff realleges paragraphs 1 through 70 and incorporates them by reference into Count VIII of this Complaint.

72. Section 1981, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

73. Defendant retaliated against Plaintiff for her complaints of discrimination. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Section 1981.

## COUNT IX

### VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT

74. Plaintiff realleges paragraphs 1 through 73 and incorporates them by reference into Count IX of this Complaint.

75. The Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. ("IWPCA"), requires employers to pay employees for all hours worked.

76. In violation of the IWPCA, Defendant failed to pay Plaintiff for all hours she worked.

77. Defendant knowingly and willfully violated the IWPCA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate Title VII, the FMLA, Section 1981, and the anti-retaliation provisions of those laws;

b. Declare that the acts and conduct of Defendant violate the IWPCA;

c. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

d. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

e. In the alternative to paragraph (d), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

f. Award Plaintiff compensatory damages;

g. Award Plaintiff punitive damages;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Amended Complaint.

Respectfully submitted,

By:
    *s/Erika Pedersen*

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
309 W. Washington
Suite 1200
Chicago, IL  60606
(312) 855-1200
(312) 855-1207 (facsimile)